IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KING OF SWEETS ONLINE, INC.,

    Plaintiff,

  v.

KERVAN USA, LLC,

    Defendant.

Civil Action No. 23-0605-RGA

MEMORANDUM OPINION

Rick S. Miller, FERRY JOSEPH, PA, Wilmington, DE,

  Attorney for Plaintiff.

Rochelle Libid Gumapac, WHITE & WILLIAMS, Wilmington, DE; Mark E. Nakahara, WHITE & WILLIAMS, Philadelphia, PA,

  Attorneys for Defendant.

April 30, 2025

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant Kervan's motion for summary judgment on Plaintiff King of Sweets' claim. (D.I. 50). I have reviewed the parties' briefing. (D.I. 51, 55, 58). For the reasons set forth below, Defendant's motion is GRANTED.

## I. BACKGROUND

Plaintiff King of Sweets is an online candy retailer that sells candy to customers on Amazon and its own website. (D.I. 15 at 1 ¶ 1; D.I. 51-1 at 6–7 of 15). King of Sweets sells to both retail and wholesale customers and has sold candy in bulk. (D.I. 15 at 4 ¶ 13; D.I. 51-1 at 6 of 15; D.I. 55-3 at 8 of 12). Defendant Kervan is the United States sales office for the Turkish candy manufacturer Kervan Gida. (D.I. 51-4 at 4 of 40). Kervan sells candy products, but exclusively in bulk with a minimum order value of $4,000. (D.I. 51 at 3; D.I. 51-4 at 5 of 40).

Plaintiff usually obtained Peach Rings from Thayer. (D.I. 58-2 at 5 of 8). Thayer purchased its Peach Rings from Defendant. (D.I. 15 at 4 ¶ 12; D.I. 51-5 at 3, 5, 7, 9–15 of 15). In July 2022, Plaintiff attempted to purchase Peach Rings from Thayer, but Thayer did not have any Peach Rings in stock. (D.I. 15 at 2–3 ¶ 8; D.I. 51-1 at 8 of 15). Plaintiff turned to Defendant and purchased 1,000 cases of Peach Rings directly from Defendant for $33,600.00—or $33.60 per case. (D.I. 15 at 2 ¶ 7; D.I. 51-6 at 7 of 7). Once Thayer had Peach Rings back in stock in August 2022, it charged Plaintiff a lower price than Plaintiff had received from Defendant—$27.23 per case. (D.I. 55 at 4; D.I. 51-7 at 5 of 5; D.I. 51-1 at 10 of 15). Plaintiff then realized that Thayer had received a lower price on Peach Rings from Defendant than Defendant had offered to Plaintiff. (D.I. 55 at 4–5; D.I. 51-5 at 3, 5, 7, 9–15 of 15). Plaintiff demanded a partial refund from Defendant, but Defendant refused. (D.I. 55 at 5; D.I. 55-3 at 4 of 12). Defendant

offered to take back the Peach Rings. (D.I. 51-4 at 11–13 of 40). Plaintiff states Defendant did not return the Peach Rings or pay for them. (D.I. 51 at 5; D.I. 51-4 at 27 of 40).

Defendant sued Plaintiff in Delaware Superior Court for the $33,600. (D.I. 43 at 1 of 3). Plaintiff sued Defendant in this Court, alleging that Defendant had engaged in price discrimination in violation of the Robinson-Patman Act. (D.I. 1 at 4 ¶ 15); 15 U.S.C. § 13. Plaintiff amended its complaint in October 2023. (D.I. 15). The theory advanced in both complaints is that Plaintiff competes with Thayer and that the illegal price discrimination was that Plaintiff was charged more than Thayer was charged. (D.I. 1 at 5 ¶ 17; D.I. 15 at 5 ¶ 18).

Defendant now moves for summary judgment. (D.I. 50). The thin evidentiary record before the Court consists primarily of the only two depositions that have been taken (D.I. 48; D.I. 49)[1] and invoices between Plaintiff and Defendant, Plaintiff and Thayer, and Defendant and Thayer.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] dispute about a material fact is 'genuine' if the evidence is

---

[1] I note that Plaintiff's corporate witness was unable to answer a lot of questions put to him, presumably because the $33,600 transaction was handled by a different employee. That employee, during the pendency of this case, died. (D.I. 55 at 4).

3

sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. Robinson-Patman Act

Section 2(a)[2] of the Robinson-Patman Act provides in relevant part:

---

[2] Section 2(a) refers to section 2 of the Clayton Act as amended by the Robinson-Patman Act, which is codified at 15 U.S.C. § 13. *See Volvo Trucks North Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175–76 (2006).

4

> (a) **Price; selection of customers**
>
> > It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. . . .

15 U.S.C. § 13(a). The Act states, however, "nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered," and "nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade[.]" *Id.*

### III. DISCUSSION

"[I]n order to prove a violation of section 2(a) of the Robinson-Patman Act, a plaintiff must show (1) that sales were made to two different purchasers in interstate commerce; (2) that the product sold was of the same grade and quality; (3) that defendant discriminated in price as between the two purchasers; and (4) that the discrimination had a prohibited effect on competition." *Feesers, Inc. v. Michael Foods, Inc.*, 498 F.3d 206, 212 (3d Cir. 2007) ("*Feesers I*") (citing *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 556 (1990)).

The fourth element,[3] often referred to as "competitive injury," "ensures that section 2(a) does not ban all price differences, but rather proscribes price discrimination only to the extent that it threatens to injure competition." *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1134 (9th Cir. 2023) (cleaned up) (citing *Volvo Trucks North Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006)). To establish a "competitive injury," Plaintiff must "show that there is a '*reasonable possibility* that [the] price difference may harm competition[.]'" *Feesers I*, 498 F.3d at 212 (alterations in original) (quoting *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 434–35 (1983)). A plaintiff may show this "reasonable possibility" through "'proof of substantial discrimination over time' or direct evidence of lost sales caused by the discrimination[.]" *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1534 (3d Cir. 1990) (quoting *Falls City*, 460 U.S. at 434–35). Plaintiff concedes that it "can not establish price discrimination over time" and instead must establish lost sales or profits. (D.I. 55 at 11).

Plaintiff is pursuing a theory of "secondary line" injury. A "secondary line" injury involves "discrimination affecting competition among customers of the discriminating seller." *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1269 n.1 (3d Cir. 1995).

Defendant argues that it should be granted summary judgment because Plaintiff has failed to provide evidence of either (A) competitors receiving lower prices during the relevant time period, or (B) lost sales/profits. (D.I. 51 at 9, 13–14; D.I. 58 at 4–7).[4]

---

[3] The parties do not dispute that Kervan sold the same Peach Rings product to King of Sweets and Thayer (and other companies) in interstate commerce for different prices. "[A] price discrimination within the meaning of [section 2(a)] is merely a price difference." *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 549 (1960). Accordingly, the only element at issue is whether there was a "prohibited effect on competition." *Feesers I*, 498 F.3d at 212.

[4] Defendant also argues for the affirmative defense that its discounts are "functional discounts." *See Texaco*, 496 U.S. at 555–56 (noting protection under the Robinson-Patman Act for discounts

### A. Competition with a Favored Purchaser

As a "prerequisite to establishing secondary line injury, a plaintiff must 'first prove that, as the disfavored purchaser, it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential.'" *Stelwagon*, 63 F.3d at 1271 (citation omitted). "[T]he timing of competition and the nature of the market are critical factors to consider when determining whether the plaintiff can show that it was a competing purchaser of a favored purchaser." *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191, 201 (3d Cir. 2010) ("*Feesers II*") (discussing *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 226–29 (3d Cir. 2008)); *see Precision Printing Co., Inc. v. Unisource Worldwide, Inc.*, 993 F. Supp. 338, 348 (W.D. Pa. 1998) ("The different prices . . . must have been charged at reasonably contemporaneous times.").

When determining whether two companies are in competition, the key question is whether they are "'in economic reality acting on the same distribution level,' rather than whether they are both labeled as 'wholesalers' or 'retailers.'" *Feesers I*, 498 F.3d at 214 (quoting *Stelwagon*, 63 F.3d at 1272). Only if two companies "are each directly after the same dollar are they competing." *Id.* (citation omitted). This "dollar-for-dollar analysis" is known as "the competing purchaser requirement." *Feesers II*, 591 F.3d at 197.

Defendant argues that Plaintiff is unable to show it is "competing for the same dollars" as other entities because Plaintiff lacks information about the customers who purchase its candy on Amazon. (D.I. 51 at 15).

---

that are "justified by savings in the seller's cost of manufacture, delivery, or sale"); 15 U.S.C. § 13(a). Because I find that Plaintiff has failed to provide evidence in support of its prima facie case, I do not need to address the "functional discount" affirmative defense.

Defendant argues that Thayer and Plaintiff "operate at different distribution levels in the candy industry" and therefore are not competitors. (*Id.*). Defendant cites the frequency and size of Thayer's orders from Defendant compared to those placed by Plaintiff. (*Id.*). Likewise, Defendant argues that its other customers that received discounted prices on Peach Rings "perfor[m] markedly different roles in the distribution system than King of Sweets," such as selling to "food service operators" and "infus[ing] Kervan's gummy candies with CBD before selling them." (*Id.* at 16). Of the Kervan customers who purchased Peach Rings in July or August of 2022,[5] Defendant argues that these customers "sell to different customer bases than King of Sweets, who sells primarily to individuals through Amazon." (*Id.* at 17).

Plaintiff counters that many of those customers do indeed sell Defendant's products on Amazon, "making them direct competitors" of Plaintiff. (D.I. 55 at 5 (citing D.I. 55-3 at 7 of 12)). More broadly, Plaintiff argues that Plaintiff's competitors are "companies selling like products in the e-commerce space," both on Amazon and their own websites. (*Id.* (citing D.I. 55-3 at 10–11 of 12)). Plaintiff's part owner and chief information officer, Ernest McCloskey, testified to seeing Defendant's customers selling Kervan products on Amazon, but did not provide screenshots or other evidence that those products were Peach Rings and not some other Kervan product. (D.I. 55-3 at 7 of 12). However, Plaintiff cites the website of one Kervan customer, Simply Snacks, that both "received favorable pricing over the plaintiff in a contemporaneous transaction" for Peach Rings and currently "directs customers to its Amazon storefront" on its website. (D.I. 55 at 10 n.6). Plaintiff argues that many of these customers are

---

[5] Defendant identifies the customers as "Nassau Candy, All American, 21st Century, Century Snacks, Aymie's Stuff, Simply Snacks, Ray Snacks, and Salteez." (D.I. 51 at 17; *see* D.I. 51-1 at 14 of 15).

8

at the same market level as Plaintiff because they "do the same thing as [King of Sweets]: they re-package and sell [Kervan's] products." (*Id.* at 5).

Plaintiff's complaint exclusively alleges competition between Plaintiff and Thayer, which the complaint states are "two companies in direct competition with one another in the stream of commerce." (D.I. 15 at 5 ¶ 18). Not surprisingly, Defendant's summary judgment brief argues that Plaintiff has no evidence that it and Thayer compete. (D.I. 51 at 14–15). Notwithstanding Defendant's argument, Plaintiff's opposition brief provides no counter-argument. Indeed, it seems to concede the point. Plaintiff merely calls Thayer its "usual distributor," and instead focuses on other companies revealed during discovery. (D.I. 55 at 4, 5, 9–10, 12). Mr. McCloskey testified that Plaintiff has sold Peach Rings in bulk and that Plaintiff has sold some candy in pallet quantities. (D.I. 55-3 at 8 of 12). This could indicate that it operates, on occasion, as more of a "distributor" than a "retailer" and would be a competitor with Thayer. But as Plaintiff does not point to any evidence in the record to support that Thayer and King of Sweets were contemporaneously operating as competitors at the same market level receiving different prices for Peach Rings, Plaintiff has forfeited its claim as it relates to Thayer as a competitor. *See Ardo v. Pagan*, 652 F. Supp. 3d 545, 565 (E.D. Pa. 2023) (holding a plaintiff's failure to defend against arguments in defendant's motion for summary judgment constituted abandonment of those claims); *ECB USA, Inc. v. Savencia, S.A.*, 2025 WL 417738, at *14 (D. Del. Feb. 6, 2025) (same).

Discovery and the deposition of Kervan's Rule 30(b)(6) witness, Mr. Cezik, revealed several other companies receiving favorable prices that operate on the same market level as Plaintiff. For example, both Plaintiff and Simply Snacks are re-baggers. (D.I. 55-1 at 5 of 11; D.I. 55 at 5). On July 6, 2022, Kervan charged Simply Snacks $27.80 per case for 200 cases of

9

Peach Rings. (D.I. 55-1 at 5–6 of 11). Mr. McCloskey testified that, based on his own web-browsing, some of Kervan's customers sold Kervan products on Amazon between 2020 and 2022. (D.I. 51-1 at 14 of 15). Simply Snacks was one of these Kervan customers. (*Id.*).[6] However, Mr. McCloskey could not provide any evidence that Simply Snacks, or any Kervan customer, was selling Peach Rings on Amazon or its own website in July or August of 2022. Plaintiff's evidence does not surpass the requisite "scintilla." *Williams*, 891 F.2d at 460–61.

I find that Plaintiff has failed to present a genuine dispute of material fact as to whether Plaintiff and Simply Snacks, or other Kervan customers, were "directly after the same dollar" in their sales of Peach Rings following their purchases from Defendant in July 2022. *Feesers I*, 498 F.3d at 214.

### B. Competitive Injury – Lost Sales/Profits

Even assuming Plaintiff could demonstrate that it was "directly after the same dollar" as a competitor that received a favorable price, Plaintiff would have to show it suffered a "competitive injury" to prevail under the Robinson-Patman Act.

As the purpose of the Robinson-Patman Act is prophylactic rather than remedial, evidence of actual harm to competition is not required. *Feesers I*, 498 F.3d at 213 (citing *J.F. Feeser*, 909 F.2d at 1531). To establish a "competitive injury," Plaintiff must "show that there is a '*reasonable possibility* that [the] price difference may harm competition.'" *Id.* at 212 (alterations in original) (quoting *Falls City*, 460 U.S. at 434–35). Because Plaintiff concedes it cannot establish "proof of substantial price discrimination over time," however (D.I. 55 at 11),

---

[6] It appears that Mr. McCloskey used the "Wayback Machine" to find that nineteen Kervan customers that King of Sweets regards as competitors sold products on Amazon. (D.I. 55-3 at 7 of 12).

10

Plaintiff must show this "reasonable possibility" through "direct evidence of lost sales caused by the discrimination[.]" *J.F. Feeser*, 909 F.2d at 1534 (quoting *Falls City*, 460 U.S. at 434–35).

Defendant cites to *Spartan Concrete* for the proposition that Plaintiff must provide "evidence of causation" to establish competitive injury by way of "lost sales." (D.I. 51 at 9); *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107 (3d Cir. 2019). Defendant faults Plaintiff for its failure to address the case. (D.I. 58 at 5). But the Third Circuit in *Spartan Concrete* only focused on the additional requirements of an "antitrust injury" necessary for a plaintiff to receive damages under section 4 of the Clayton Act. *Spartan Concrete*, 929 F.3d at 113; *see* 15 U.S.C. § 15. For treble damages under section 4, a plaintiff must "prove a causal connection between the price discrimination and actual damage suffered." *Stelwagon*, 63 F.3d at 1273. But to receive injunctive relief under the Robinson-Patman Act, a plaintiff need only make a showing of "competitive injury" as part of its prima facie case. *Id.* "So long as there is a discrimination, the effect of which 'may be substantially to lessen competition,' the section 2(a) requirement is satisfied even though other factors may in fact have contributed to plaintiff's injury." *Rose Confections, Inc. v. Ambrosia Chocolate Co.*, 816 F.2d 381, 387 (8th Cir. 1987) (citing *Falls City*, 460 U.S. at 437). The District Court in *Spartan Concrete* "assumed [the plaintiff] suffered a competitive injury (the fourth element)." *Spartan Concrete*, 929 F.3d at 113. Accordingly, "competitive injury" was not in question and *Spartan Concrete* is not instructive on this issue.

Mr. McCloskey testified at his deposition that the price at which King of Sweets sells depends in part on its purchase price. (D.I. 55-3 at 6 of 12).

> Q. What sort of factors go into pricing?
> A. So how it works is if we are selling on Amazon, it's the buy price of product, cost of shipping of the product, like, from wherever a vendor is if we have to pay shipping fees for it. The cost of postage to send it out. All that is

11

> added together, and then we take the Amazon referral fee – 15 percent usually if it is above $14 or $14.99. All that incorporated creates our break even price.
>
> This is what we can sell it for and not make any money, but pay for the product. And also a handling fee for the person to package the product in the warehouse. So with that number, that is our lowest selling point. Then how we sell it for is we find the lowest buyer – or the lowest seller like on Amazon and we sell a penny under them.

(*Id.*). Mr. McCloskey testified that, after purchasing the Peach Rings from Kervan, there were "several months that King of Sweets did not sell any peach rings through Amazon" because its "price was not competitive." (*Id.* at 11 of 12). Mr. McCloskey agreed that after July 2022, other online retailers were offering Peach Rings for a lower price than Plaintiff could offer. (*Id.*). Mr. McCloskey testified that, for a specific product being sold on Amazon, offering the product at the lowest price gives a seller more visibility to customers. When a customer searches for that product, Amazon returns a result where the seller offering the lowest price appears in the "buy box" and the customer can "click the button to buy." Other sellers appear alongside "a button that says from other sellers." (*Id.* at 9 of 12).

After three months, Plaintiff bought more Peach Rings from Thayer at a lower price to "help distribute the cost." (*Id.* at 11 of 12). This allowed Plaintiff to lower its "break even price" to "be competitive on Amazon again." (*Id.* at 12 of 12). When Plaintiff "lowered the price," it "started selling again." (*Id.* at 11 of 12). Based on this testimony, Plaintiff argues that it "simply could not sell the product it ordered from [Kervan] at a competitive price." (D.I. 55 at 11).

Defendant argues that Plaintiff "has not shown any evidence that its competitors were buying Peach Rings for a better price at the time, or that any of King of Sweets customers purchased Peach Rings from other vendors at that time." (D.I. 51 at 10). Defendant argues that Plaintiff fails to present either expert evidence on competitive injury or "evidence of any specific lost customers or sales." (*Id.* at 13). Defendant also argues that Plaintiff "was aware of what

12

price it could pay for Peach Rings to turn a profit," and, "given King of Sweets' monitoring of the candy market and fixation of price," Plaintiff's choice to buy Peach Rings from Kervan indicates that "Peach Rings were not available for a better price from elsewhere." (D.I. 58 at 1).

"Depositions and affidavits . . . demonstrating actual instances of lost sales because of [a plaintiff's] inability to match its competitors' prices" may be sufficient to establish competitive injury. *J.F. Feeser*, 909 F. 2d at 1537. However, the Supreme Court has cautioned lower courts to construe the Robinson-Patman Act narrowly to avoid "giv[ing] rise to a price uniformity and rigidity in open conflict with the purposes of other antitrust legislation." *Volvo Trucks*, 546 U.S. at 181 (citing *Automatic Canteen Co. of Am. v. FTC*, 346 U.S. 61, 63 (1953)). In line with this principle, the Second Circuit has held that "*de minimis* evidence of lost sales is insufficient to establish competitive injury[.]" *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 211 (2d Cir. 2015). In that case, unlike here, the plaintiffs performed extensive discovery to attempt to prove diverted sales. Despite some evidence of lost customers, the Second Circuit held that summary judgment was appropriate. *Cash & Henderson*, 799 F.3d at 213.

Not only has Plaintiff failed to demonstrate which of Kervan's customers it competes with for the "same dollar," it has also failed to provide evidence of lost sales other than Mr. McCloskey's general explanation about how Plaintiff sets its prices. Plaintiff does not track data about Amazon customers and does not have any information about how or why those customers make their purchasing decisions. (D.I. 51-1 at 6 of 15). And Mr. McCloskey testified that, at the time of his deposition, "probably 90 percent" of King of Sweets customers came from Amazon. (*Id.* at 7 of 15). Much like 1,000 cases of Peach Rings, Plaintiff's argument contains holes. Plaintiff's evidence of lost sales is *de* minimis, speculative, and insufficient to counter Defendant's motion for summary judgment.

Defendant's motion for summary judgment on the fourth element of Plaintiff's prima facie case, competitive injury, is GRANTED.

### C. Treble Damages

After establishing a prima facie case under section 2(a), "[p]ursuant to § 4 of the Clayton Act, a private plaintiff may recover threefold for actual injury sustained as a result of a violation of the Robinson-Patman Act." *Volvo Trucks*, 546 U.S. at 176; *Spartan Concrete*, 929 F.3d at 113; see 15 U.S.C. § 15. Because Plaintiff cannot prove competitive injury, it is not entitled to treble damages under the Clayton Act.

Defendant's motion for summary judgment as to treble damages under the Clayton Act is GRANTED.

### IV. CONCLUSION

An appropriate order will issue.